Charles E. Glancy, p. a.
vs           No. 61075
Revere W. Kent, alias

RESCRIPT
April 20, 1927

HAHN, J. Heard on defendant's motion for a new trial after a verdict for the plaintiff in the sum of $19,340 in an action of trespass on the case for negligence which resulted in loss of plaintiff's left arm, with a further special finding that the plaintiff, at the time of the accident, was under the age of sixteen.

The motion, while in the customary form, was argued upon the question of whether the plaintiff had shown by a fair preponderance of the evidence that the accident was not the result of his own contributory negligence and that the damages awarded were excessive.

The evidence disclosed that the plaintiff, a boy of fourteen years of age, on June 11, 1924, obtained employment in the defendant's factory on Cottage Street in Pawtucket. He told Mr. Arnold, the superintendent, in response to a question, that he was sixteen years of age. After working at various tasks in the morning of the day of his employment, he was in the afternoon put in charge of one of the two picker machines which constituted the major part of the equipment of the factory, and, according to his testimony, a rotary fan, operating at the entrance to the box in which the picker roll was located, clogged with material twice and he freed it. When it clogged the third time, in seeking to free the fan, his left hand was caught by the revolving picker cylinder and his arm drawn into the machine. No one saw the accident but his cries attracted the attention of others. The power was turned off and his arm finally taken from the machine. He was removed to the hospital where his left arm was found to be so badly mangled that amputation was necessarily resorted to, the arm being removed close to the shoulder. The plaintiff suffered greatly at the time and continues to suffer, the stump still showing tenderness.

It was found by another justice of this court, as a matter of law, that the plaintiff's misrepresentation of his age in no manner excused the defendant from the payment of damages if found to be negligent and, after such decision, the case came on for trial before a jury.

The statutory provisions contained in Public Laws of 1923, Chap. 482, Sec. 6, prohibiting the employment of minors on "picker machines or ma-

chines used in picking wool," &c., and the statute in relation to the employment of children under sixteen years of age, General Laws 1923, Chap. 85, were considered and the defendant sought to introduce evidence tending to show that the danger which in the end brought about the injury to the plaintiff was apparent and that the plaintiff was fully instructed as to the operation of the picker machine by means of which he lost his arm.

The Court and jury viewed the present factory of the defendant in which were two picker machines, one of which caused the accident. This machine had since the time of the injury been repaired because of damage to the same by fire, but the general appearance, method of operating the same and location were very similar to the two machines at the time of the injury. From this view it was apparent that no young boy could be taught with sufficient particularity to safely run such machines in the length of time given to teaching and instructing of the plaintiff in this case. There were various communicating belts; there was an apron or feed table carrying and transporting the material to be picked to the picker rolls, at the side of which apron was a lever which to the untrained mind might well have been supposed to shut down the entire machine, and plaintiff testified that he supposed that the lever in question did shut down the entire machine: Page 30. "Q. How did you stop apron?

A. I let in the lever on the side of the framework of the apron. Let it in and that, as I thought, stopped everything.

Q. I am not asking what you thought, I am asking you what you did. Just answer the questions. You let the lever in, in order to stop the apron from operating, is that right?

A. Yes."

Page 33. "Q. Do you know where the device was that stopped this ma-

chine, the whole machine?

A. I understood it to be a lever at the side of the apron."

There was a rotary fan near the picker roll, and a great amount of complicated high speed machinery, exceedingly noisy in its operation, and the picker rolls could not be stopped rotating without the shutting down of the power plant of the entire factory. This in itself would lead to the belief, unless a person were fully instructed in relation to the same, that slight confusion at the point where the material approaches the picker rolls should be straightened out by hand under most circumstances, as it is not reasonable to believe that the plant had to be shut down every time there was a confusion in the feeding of material which, in the nature of things, would cease to feed regularly to the rolls at different times and through different causes.

The evidence shows that the plaintiff was not properly instructed in the handling of the picker machine. The time was insufficient, the manner was inadequate, even as testified to by defendant's witnesses. For at least one or two days the plaintiff should have been with an experienced man and instructed in the operation of the machine and in the disposing of the material feeding into it in case confusion arose. In this connection the youth of Mr. Arnold, the superintendent, may well be considered.

As to the fact that the danger was apparent, while this might have been so to a person mechanically inclined and fully instructed as to the operation of the machine, it would not, under the circumstances, be apparent to a person of plaintiff's age and experience.

In the opinion of this Court, the finding of the jury that the defendant was guilty of negligence was based upon ample evidence, and the evidence of contributory negligence on the part of plaintiff or evidence that the danger was known and assumed might

well have failed to satisfy the jury, especially after the view and knowledge that there was little or no time spent in explaining and instructing a young boy in regard to dangers which in the nature of things, to an untrained mind, were not readily apparent.

As to the amount of the verdict, the Court has considered numerous cases having to do with the loss of an arm and has also taken into account the difference in the purchasing power of money with reference to the times at which verdicts were rendered for this and similar accidents. The Court also finds that an artificial arm may be used by plaintiff which, because of the length of stump remaining, will not be of any utility but will do away to an extent with the disfigurement caused by the absence of the arm which was lost.

In view of the circumstances and a thorough consideration of the authorities regarding the question of damages, and particularly the decisions of our Supreme Court in the cases of Rose Morrison vs. R. I. Co., 41 R. I. 474, and Cook vs. Union Elec. Supply Co., 135 Atl. 345, at page 346, the verdict appears to be excessive and should be reduced to the sum of $14,500, which amount in our opinion would be just and fair under all of the circumstances.

Unless the plaintiff shall within 10 days of the filing of this rescript file a remittitur of all of said verdict in excess of $14,500, the defendant's motion for a new trial is granted, otherwise denied.

For Plaintiff: Arthur Cushing.

For Defendant: Gardner, Moss & Haslam.